UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

JOHN MOORE, et al.                                                                                         Plaintiffs

v.                                                                                                No. 5:20-cv-00148-BJB

THE CINCINNATI CASUALTY                                                                       Defendant
COMPANY

\* \* \* \* \*

**OPINION AND ORDER**

The Estate of Mary Opal Moore won a substantial civil judgment against Superior Care Homes, a nursing home, for its treatment of Ms. Moore before her death.  Then the Estate sued the Cincinnati Casualty Company, the nursing home's insurer, over its alleged involvement (or lack thereof) in failed settlement negotiations that preceded the jury verdict.  According to the Estate, Cincinnati Casualty's stonewalling during pretrial negotiations breached a statutory duty of good-faith settlement discussions triggered when Cincinnati Casualty became aware that its policyholder would be held liable to the Estate.

The Estate's claim is novel: it seeks to hold a non-party insurer liable for the pain and suffering of the Estate's beneficiaries, as well as the cost of trial, after the insurer allegedly failed to meaningfully engage in pre-trial settlement negotiations.  This lies far afield from a conventional bad-faith claim, which offers *policyholders*—not tort plaintiffs suing policyholders—recourse if an insurer's unreasonable refusal to settle below the policy limits left the policyholder facing a verdict in excess of those limits.  Although Kentucky courts have interpreted the Commonwealth's bad-faith statute to impose a duty of good faith toward policyholders *and* third parties, extending that duty to pre-verdict, third-party settlement negotiations would represent a major step outside the current confines of Kentucky law.

Accordingly—after extensive motion practice, oral argument, and supplemental briefing—this Order resolves three pending motions.  The Court GRANTS the Estate's motion for leave to amend its Complaint [DN 6], GRANTS the Estate's motion for leave to file a surreply [DN 10], and GRANTS, without prejudice, Cincinnati Casualty's motion to dismiss with respect to the Amended Complaint [DN 5].[1]

---

[1] During oral argument, the Estate and Cincinnati Casualty agreed that the amended complaint raised only a single cause of action for bad-faith settlement negotiations under the Kentucky Unfair Claims Settlement Practices Act.  Argument Transcript [DN 17] at 5–6.  Cincinnati Casualty further agreed that its motion to dismiss fairly covered the allegations in the first amended complaint.  *Id.* at 11–12.  The Court therefore

## The Estate's Current Allegations and Prior Recovery

The Estate sued Superior Care, Cincinnati Casualty's policyholder, in state court for alleged mistreatment of Ms. Moore before her death. Amended Complaint [DN 6-1] at 6. Then the Estate sued Cincinnati Casualty, which removed this lawsuit from state to federal court. Although the Complaint is captioned under the names of the co-executors, Plaintiff's counsel confirmed that the only real plaintiff in this case is the Estate. Tr. at 6. According to its allegations, which we accept as true at the motion-to-dismiss stage, Cincinnati Casualty acted in bad faith during the initial suit in two respects.

*First*, the Estate alleges that Cincinnati Casualty failed to accurately or promptly disclose Superior Care's policy limits. During discovery the Estate asked Superior Care to disclose all liability insurance policies. Amended Complaint at 5–6.[2] Superior Care's counsel, which the Estate insists Cincinnati Casualty hired, allegedly refused to comply with the Estate's initial request. *Id.* at 6; Surreply [DN 10-1] at 4. The Estate, though it professes still not to know the actual policy limits, eventually received information indicating that Superior Care held a Cincinnati Casualty policy with a limit of $1 million per medical incident and an aggregate limit of $3 million. Amended Complaint at 6.

*Second*, the Estate alleges that Cincinnati Casualty either failed to respond in good faith to the Estate's settlement offers or else interfered with Superior Care's responses to the Estate's demands. As the Estate's understanding of the case and the policy limits evolved, the Estate made several demands or settlement offers ranging from $395,000 to $2 million. *Id.* at 6–7. Superior Care never responded to these offers and never engaged in serious settlement negotiations despite what the Estate saw as clear evidence indicating Superior Care's, and therefore Cincinnati Casualty's, substantial liability. *Id.* The jury eventually agreed that Superior Care was liable for its care of Ms. Moore—returning a verdict topping $2.2 million for the Estate. *Id.* at 8. The verdict included $570,834 for Ms. Moore's pain and suffering, $17,196 for her medical expenses, and $1,625,000 in punitive damages. *Id*.

---

measures the amended complaint against the motion to dismiss and concludes that it does not meet the Federal Rule 12(b)(6) threshold. *See Yates v. Applied Performance Technolgies, Inc.*, 205 F.R.D. 497, 499 (S.D. Ohio 2002) (quoting 6 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1476 (3d ed. 2020) ("[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.").

[2] Given the decision to grant leave to amend, the Opinion refers to the Estate's allegations as set forth in its Proposed Amended Complaint, which the Court directs the Clerk to file and refers to in this opinion as the Amended Complaint.

Following the resolution of the state-court action, the Estate sued Cincinnati Casualty for its alleged bad faith during settlement negotiations and litigation. Cincinnati Casualty removed the bad-faith action to this Court and filed a motion to dismiss. Eighteen days later—within the time allowed by the Federal Rules for amendment as a matter of course (that is, without the need for leave of court)—the Estate filed a motion for leave to amend the complaint. After substantial briefing on the adequacy of the Estate's pleading and motion for leave, the Estate requested leave to file a surreply to the motion to dismiss. The Court held argument and invited the parties to file supplemental briefs.

### The Estate's Attempt to Amend Its Complaint

The Federal Rules of Civil Procedure directly address when and how the Estate may amend its complaint. Rule 15(a)(1)(B) authorizes a party to "amend its pleading once as a matter of course" if it does so within "21 days after service of a motion under Rule 12(b)." The litigant need not ask permission to amend following a motion to dismiss; it may just file the amended pleading, which automatically becomes the operative pleading. "In all other cases," according to Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave." And courts, that provision goes on to explain, "should freely give leave when justice so requires." *Id.* The Sixth Circuit has identified four factors that may nevertheless provide the basis for denying amendment: (1) undue delay, (2) bad faith or dilatory motives, (3) undue prejudice to the opposing party, and (4) futility. *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995).

In response to Cincinnati Casualty's motion to dismiss, the Estate acted promptly: it moved for leave to amend eighteen days later. Both sides agree that the Estate simply could have *filed* its proposed amended complaint at that time under Rule 15(a)(1)(B). Yet Cincinnati Casualty argues that because the Estate *asked* to file, the text of Rule 15(a)(1)(B) doesn't reach this situation, such that the Estate must seek leave and justify its amendment instead. The Estate, for its part, sees little practical justification for scrutinizing an amendment that would've been automatic if titled differently. But neither does it see much risk that its proposed amendment wouldn't be granted under ordinary motion-for-leave considerations.

The parties do not cite any Sixth Circuit authority on the question. And the answer is not entirely clear from the Court's own review of the applicable precedents. In 2013, the Court of Appeals concluded that a plaintiff "waived" its right to amend as a matter of course because it "sought leave in the district court instead of simply filing an amended complaint" and "cited in support of [its] request the portion of Civil Rule 15 that says leave is required." *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458 (6th Cir. 2013), *abrogated on other grounds by Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019). But in 1947, the Court of Appeals held that a trial court erred by rejecting an amendment when the plaintiff had the right "to amend as a matter

of course," but nonetheless sought leave. *Rogers v. Girard Trust Co.*, 159 F.2d 239, 241 (6th Cir. 1947). Wright & Miller treats the *Glazer* approach as an outlier of sorts, departing as it does from the consensus tentatively recognized among "several courts" that "have held that the amendment should not be handled as a matter addressed to the court's discretion[,] but should be allowed as of right," if "a party erroneously moves for leave to amend before the time for amending as of course has expired." 6 Wright & Miller § 1482.

Likely the proper course, and certainly the cautious approach, under these circumstances is to examine the proposed amended complaint under the typical leave-to-amend factors. *See Crawford*, 53 F.3d at 753. And that analysis is simple enough in this case: Cincinnati Casualty conceded that the only factor at play here is futility, Tr. at 9, which effectively overlaps with its argument that the allegations must be dismissed under Rule 12(b)(6) regardless of which complaint applies. *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss"). This reduces the significance of the parties' Rule 15 briefing and argument almost to the vanishing point. The Court grants the Estate's motion to amend, grants the Estate's motion to file a surreply, and examines the proposed amended complaint under Rule 12(b)(6) as the operative pleading.

**Cincinnati Casualty's Motion to Dismiss the Initial and Amended Complaints**

To survive a motion to dismiss, a complaint must provide "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff shows that it is entitled to relief by "plausibly suggesting" that it can establish the elements of the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "And a plaintiff's suggestion is plausible when it contains enough factual content that the court can reasonably infer that the defendant is liable." *Doe v. Baum*, 903 F.3d 575, 580 (6th Cir. 2018) (citing *Iqbal*, 556 U.S. at 678). Courts must accept all the plaintiff's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and determine whether those facts and inferences plausibly entitle the plaintiff to relief. *Iqbal*, 556 U.S. at 679.

The Amended Complaint narrows the Estate's suit to a single claim under Kentucky's Unfair Claims Settlement Practices Act.[3] Ky. Rev. Stat. Ann. § 304.12-230. The Act prohibits insurances companies from engaging in unfair claim-settlement practices, including unreasonable investigation, settlement, and explanation for the denial of claims. *Id.* The parties agree that three

---

[3] At oral argument, the Estate agreed that the amended complaint asserts a single statutory claim. Tr. at 5. And despite some inconsistent language in the Amended Complaint, Amended Complaint at 2, 10, the Estate further acknowledged that the co-executors named in the case caption are not actually separate individual plaintiffs, but merely assert this claim on behalf of the Estate in their representative capacity. Tr. at 6.

factors, set forth by the Kentucky Supreme Court in *Wittmer v. Jones*, 864 S.W.2d 885, 890 (1993), determine whether a plaintiff has stated a cognizable bad-faith claim:

> (1) the insurer must have been obligated to pay the claim under the terms of the policy;
> (2) the insurer must have lacked a reasonable basis in law or fact for denying the claim; and
> (3) the insurer must have known that no reasonable basis existed for denying the claim or else acted with reckless disregard for any such basis.

*Hollaway v. Direct Gen. Ins. Co. of Mississippi, Inc.*, 497 S.W.3d 733, 737–38 (Ky. 2016) (quoting *Wittmer*). "Proof of this third element requires evidence that the insurer's conduct was outrageous, or because of his reckless indifference to the rights of others." *Id.* at 738.

The Estate's theory of this case is that Cincinnati Casualty's unreasonable refusal to disclose policy limits or respond to settlement demands caused the Estate to unnecessarily suffer emotional distress and incur litigation costs. Surreply at 6–7; Amended Complaint at 6. The Estate cites no authority under Kentucky law or otherwise, and the Court is aware of none, that would extend liability under these circumstances. Tr. at 20–21. The Estate's Amended Complaint therefore fails for three reasons, each of which provides an independent basis for dismissal: (1) the Estate failed to plead damages caused by proceeding to a trial that ended in a large plaintiff's verdict, (2) the Estate failed to allege any facts indicating Cincinnati Casualty knew of its liability at the time of the Estate's demands, and (3) allegations that Cincinnati Casualty's conduct was outrageous are purely conclusory.

Kentucky law requires damages as a result of the alleged bad faith. *Indiana Ins. Co. v. Demetre*, 527 S.W.3d 12, 26 (Ky. 2017) (the Act only "create[s] a statutory bad faith cause of action" when read together with KRS § 446.070, which "allows a person injured by a violation of any Kentucky statute to recover damages"). Because the state-court jury awarded and the Estate admittedly collected damages exceeding the $2 million policy limit, the Estate did not suffer harm from Cincinnati Casualty's alleged conduct. Amended Complaint at 8; Tr. at 15–18, 21. In fact, the Estate would have been worse off had it settled its state court claims for only $2 million—and much worse off based on its initial offer of $395,000—because the jury returned a verdict of more than $2.2 million for the Estate.

The Estate nevertheless asserts it is entitled to two types of damages: emotional distress and litigation costs. Plaintiff's Supplemental Brief [DN 16] at 2–3. Both theories fail.

Kentucky recognizes that estates are "legal entit[ies] separate and apart from" the beneficiary. *Thompson v. Jewish Hosp. & St. Mary's Healthcare, Inc.*, No. 2017-CA-676-MR, 2018 WL 2078008, at *1 (Ky. Ct. App. May 4, 2018). This casts serious doubt on the linchpin of the Estate's argument: that it may recover on behalf of the pain and suffering of the decedent's

5

beneficiaries. The Estate—not the beneficiaries—holds the cause of action, and the beneficiaries are no longer parties to this case. *See* Tr. at 6. The Estate does not attempt to bring this action on behalf of the beneficiaries. Nor could it: as the D.C. District Court persuasively held, "[t]he only type of IIED claim an estate can make is one for the decedent himself as a survival action." *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 78 (D.D.C. 2010).

This leaves the Estate itself as the only possible injured party. But the Estate itself cannot suffer emotional distress because it is not a natural person. Courts throughout the country have agreed when examining this basic question about non-natural persons and emotional damages. The Georgia Court of Appeals, after surveying the legal landscape, concluded that "business entities … cannot recover on claims of … emotional distress as a matter of law because business entities lack 'the cognizant ability to experience emotions.'" *Osprey Cove Real Estate, LLC v. Towerview Constr., LLC*, 808 S.E.2d 425, 429 (Ga. 2017) (collecting cases including *FDIC v. Hulsey*, 22 F.3d 1472, 1489 (10th Cir. 1994), and *Lampliter Dinner Theater v. Liberty Mut. Ins. Co.*, 792 F.2d 1036, 1039 n. 2 (11th Cir. 1986)). The Estate offers no contrary authority. The Court therefore has no legal basis to consider allegations related to any pain and suffering "suffered by" the Estate. *See* Amended Complaint at 9; *cf.* Dobbs, et al., *The Law of Torts* § 381 (2d ed.) ("[A] business entity cannot recover damages for emotional distress as a matter of law, on the rationale that entities cannot 'experience emotions.'") (collecting cases).

With respect to litigation costs, the Estate did not initially plead what unreimbursed litigation costs the Estate incurred between the settlement demand and verdict. Amended Complaint at 6–8; Transcript at 14–16. Based on the supplemental briefing, that period appears to cover 46 days and $30,411 in unreimbursed costs. Amended Complaint at 6–7; Plaintiff Supplemental Brief at 3. Obviously this amount is dwarfed by the delta between its settlement offer and ultimate recovery of over $2.2 million. *See* Amended Complaint at 6–7. (Although the Estate eventually increased its demand to $2 million, that did not happen until the day before the jury verdict.) Because the Estate fails to plead facts indicating that Cincinnati Casualty harmed the Estate by not settling earlier and avoiding these costs, the claim fails under Rule 12(b)(6) for failing to assert damages, an essential element of its bad-faith claim.[4]

---

[4] The Estate's supplemental brief cites Kentucky Revises Statue § 304.12-235 to support an award of attorney's fees, though that statute is directed only to an "insured person or health care provider." The Estate is neither. Even if the Court considered this theory of attorney's fees, the Estate cites only a single unpublished precedent addressing the reasonableness of an award in favor of a third-party insured. *See Tenn. Farmers Mut. Ins. Co. v. Jones,* 2008 Ky. App. Unpub. LEXIS 19, *17 (Ky. Ct. App.) (inferring that attorney fees may be available to third parties). And that decision is readily distinguishable: the award rested on a liquidated damages amount (not the case here) and followed a delay "without reasonable foundation" (also not the case here). *See id.* at *11 (citing KRS § 304.12-235). As explained below, the Estate has not pled facts indicating Cincinnati Casualty unreasonably exercised its Seventh Amendment rights by proceeding to trial under these circumstances.

Apart from the Estate's failure to establish a plausible damages theory, the Estate also fails to meet two of the three *Wittmer* factors. First, the Estate has not shown that Cincinnati Casualty lacked "a reasonable basis in fact or law for denying the claim" when the policyholder proceeded to defend the suit at trial. *Wittmer*, 864 S.W.2d at 890. Second, the Estate has not shown that the insurer's refusal to engage in settlement negotiations was outrageous; that is, that Cincinnati Casualty *knew* it lacked a reasonable basis to deny the claim. *Id*. Rather than pleading facts in support of these contentions, the Estate merely recites the *Wittmer* factors in a conclusory fashion.

The Estate asserts Cincinnati Casualty knew or should have known it was liable by the time the Estate offered to settle. Amended Complaint at 7. But the pleadings offer no basis for this assertion, and no reason to doubt Cincinnati Casualty reasonably harbored doubts about the Estate's likelihood of prevailing before the jury. The Amended Complaint alleges (at 8), in conclusory fashion, that Cincinnati Casualty had "clear liability for substantial breaches in the standards of care." But an insurer has no general duty to accept "responsibility for … claimed damages" or "acquiesce to a third party's demands" for a settlement. *Hollaway*, 497 S.W.3d at 739 (the second *Wittmer* factor is not satisfied if an "absolute duty to pay [the plaintiff's] claim is not clearly established" or disputes persist about the degree of injury attributable to the insured's actions). An allegation that the Estate had an obligation to pay even before a jury returned a verdict would imply a duty on the part of insurers to engage with settlement demands and disclose policy information regardless of liability. *See id*. at 738–39 (discussing numerous bases on which an insurer could challenge its liability that would preclude a finding of bad faith). That would represent an extension, at the least, of the Kentucky case law on which the Estate relies. *See* Surreply at 6. An insurer that already conceded fault may not lowball an injured third party or cause extensive delay in settling a claim, but "an insurer is entitled to challenge a claim through litigation if the claim is 'fairly debatable.'" *Phelps v. State Farm Mut. Auto. Ins. Co.*, 736 F.3d 697, 704 (6th Cir. 2012) (quoting *Empire Fire & Marine Ins. Co. v. Simpsonville Wrecker Serv., Inc.*, 880 S.W.2d 886, 889–90 (Ky. Ct. App. 1994)).

In *Phelps*, a policyholder injured the plaintiff in a car accident. The insurance company conceded fault, received a detailed list of medical and wage-loss damages, and then stuck by a "lowball" offer to the injured plaintiff who stood in the shoes of the policyholder. 736 F.3d at 699–701. Here, the Estate did not allege how Cincinnati Casualty knew it was liable to the Estate, let alone for how much, when Cincinnati Casualty allegedly declined to engage in settlement negotiations. *See* DN 5 at 7–8. Recall that the Estate itself lowballed the jury verdict by nearly $2 million when it offered to settle for $395,000—undermining the notion that the extent of Superior Care's liability, including punitive damages, was liquidated or "clear." *Contra* Surreply at 5. The Estate, moreover, cites no precedent that would support extending the legal basis for its statutory bad-faith claim to reach Cincinnati Casualty's conduct.

7

As to the third *Wittmer* factor, the Amended Complaint fails to allege facts tending to show that Cincinnati Casualty's conduct was outrageous. *See Glass*, 996 S.W.2d at 452. When assessing this factor, courts look for evidence of excessive delay, unreasonably low offers, and prolonged refusal to disclose policy limits. *See, e.g.*, *Gale v. Liberty Bell Agency, Inc.*, 911 F. Supp. 2d 488, 500–02 (W.D. Ky. 2012). According to the Estate, however, only 41 days passed between its first ($395,000) settlement offer and the start of trial. The second offer ($2 million) and third offer ($1 million) were made one day apart, on days four and five of the five-day trial. Amended Complaint at 6–7. Cincinnati Casualty did not make a "lowball" offer; its insured defended the case on the merits, while the Estate made offers far lower than the ultimate verdict. In light of these facts, the Estate's allegation does not tell the Court or the Defendant when or how Cincinnati Casualty "outrageously" allowed Superior Care to defend its conduct before the state-court jury, rather than settling. The Estate's pleadings do not plead facts indicating that Cincinnati Casualty had the "malevolent intent required under *Wittmer* to be susceptible for bad faith under Kentucky law." *Hollaway*, 497 S.W.3d at 739.

Finally, the Estate tries to rely on Cincinnati Casualty's alleged failure to respond to requested discovery in the state-court action regarding policy limits. DN 10-1 at 8. Although the Kentucky Supreme Court allows evidence of problematic "settlement behavior during litigation" to establish a bad-faith claim, an insurer's failure to respond to requested discovery is not actionable. *See Knotts,* 197 S.W.3d at 517, 523 (drawing a line "between the insurer's settlement behavior during litigation and its other litigation conduct" because "[t]he Rules of Civil Procedure provide remedies for the latter") (quoting Stephen S. Ashley, *Bad Faith Actions Liability and Damages* § 5A:6 (2005)). In any event, the Estate requested policy information from Superior Care's counsel, Amended Complaint at 6, not from Cincinnati Casualty. And the Estate identifies no authority that would render a third party liable in damages under these circumstances.

## ORDER

The Court **GRANTS** the Estate's motion for leave to amend [DN 6], **DIRECTS** the clerk to file the amended complaint [DN 6-1], **GRANTS** the Estate's motion for leave to file a surreply [DN 10], and **GRANTS**, without prejudice, Cincinnati Casualty's motion to dismiss [DN 5].

February 19, 2021

Copies to: All Counsel

Benjamin Beaton, District Judge
United States District Court